[Cite as *State v. Allie*, 2024-Ohio-2262.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                    :

                                                            No. 112953

    v.                                                 :

BRIAN ALLIE,                                      :

    Defendant-Appellant.                   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676448-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa R. Riley, Assistant Prosecuting Attorney, *for appellee*.

Law Offices of Mr. William B. Norman and William B. Norman, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant, Brian Allie, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of illegal use of a minor in nudity-oriented material or performance. For the following reasons, we affirm.

**{¶ 2}** In December 2022, the state named Allie in a 17-count indictment charging him with six counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1), a felony of the second degree (Counts 1 through 6); ten counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3), a fifth-degree felony (Counts 7-16); and one count of possessing criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree (Count 17). Counts 1-9 and 14 pertained to images of his niece, and Counts 10-13 and 15-16 pertained to images of seven unknown females in six photographs. Allie pleaded not guilty, and the case proceeded to trial where the jury heard and observed the following evidence.

## I. Jury Trial

**{¶ 3}** Justin Rotili, an Ohio Internet Crimes Against Children Task Force ("ICAC") special investigator with the Cuyahoga County Prosecutor's office, testified that he has been in law enforcement since 2007. He explained both the proactive side of child exploitation cases, i.e., using chat operations to identify individuals seeking children for inappropriate conduct, and the reactive side of his investigations, i.e., receiving cybertips from social media platforms or cloud-based storage applications that have identified possible child exploitation or enticement activity. Rotili testified that once ICAC analysts discover the IP addresses associated with potential violators, subpoenas are issued to obtain subscriber information, and a search warrant may be executed on the house where the subscriber resides. He

stated that he executed the search warrant at Allie's address and discovered the electronic devices in Allie's home.

{¶ 4} Detective Kevin Navratil testified that he had been in law enforcement for nine and one-half years, but from November 2019 until March 2021, he worked in the Cleveland Division of Police, Sex Crimes and Child Abuse Unit, and since March 2021, he had been a forensic analyst assigned to ICAC, which investigates the possession and distribution of child pornography. Det. Navratil testified that his job duties included performing forensic analysis on digital evidence discovered on computers, phones, and tablets. He testified that he received training at the National Computer Forensic Institute, held many certifications pertaining to the utilization of data extraction software, and had conducted forensic analysis on approximately 500 devices.

{¶ 5} Det. Navratil explained how images, files, and videos are extracted from various electronic devices by using Cellebrite forensic software. He stated that each image, video, or file contains a "path" that reveals where that digital evidence originated, and that "cache files" or "thumbnails" are files created from the original image for faster access. He said that he then uses Griffeye, an efficient media viewing tool, which reads all the content extracted by Cellebrite. Det. Navratil testified that in child exploitation cases, he views every image, video, and file extracted from the device. He explained that one tool that is useful in sorting through the digital evidence is the Project VIC hashtag database. Det. Navratil said that each image, file, or video receives a "hash value," which is analogous to a DNA

fingerprint — no two images, even if edited, will have the same hash value. He explained:

> So that is a database provided to law enforcement. It contains hash values of child abuse material, child exploitive age difficult, and CGI animation and non-pertinent files. When you run it through Griffeye, it will automatically categorize this media for me so it kind of goes by a color system. It will be green will be non-pertinent, red will be the illegal files, yellow will be age difficult child exploitive, and it's a tan color for CGI animation.

(Tr. 297.) He stated that he is specifically looking for child sexual abuse material. He explained:

> So that will be a minor child engaged in a sex act. Typically the way I'm going to mark them is I'm looking for no development at all on the child, [i.e., if the person is a female, there is no development of breasts, or pubic hair], or [the child is] engaged in a sex act.

(Tr. 298.)

{¶ 6} Specific to this case, Det. Navratil stated that he conducted a forensic analysis on evidence recovered from a search warrant on Allie's home; specifically, a black Motorola Droid, a black and red Motorola, a black Samsung phone, a black Apple iPad, and a black Samsung Galaxy Note cellphone. He testified he located on Allie's Samsung Galaxy Note a Gmail account for dawgba68@gmail.com and a phone number of 440-336-2003 — "That would have been associated with the cybertip." (Tr. 313.)

{¶ 7} Det. Navratil also found an application called "Vaulty Hide Pictures and Videos" on Allie's devices. He explained that Vaulty is a password protected mobile phone application that stores videos and photos. Det. Navratil testified that images of the unknown females that formed the basis for Counts 10-13 and 15-16

were stored in the Vaulty app on Allie's black Samsung phone. (Exhibit No. 5.) Det. Navratil testified that the images showed females with their vaginas, breasts, and buttocks exposed. He opined that the unknown females were prepubescent due to the lack of breast development and pubic hair. The jury viewed the photographs.

{¶ 8} Allie called three witnesses in his defense — his sister, his wife, and himself. His sister testified that she consented to Allie possessing the photographs of her daughter; in fact, she admitted that she sent some of the pictures to him. The defense admitted into evidence a letter of written consent from Allie's sister that explained that Allie had permission to possess the photographs that formed the basis for Counts 1-9 and 14.

{¶ 9} On cross-examination, Allie's sister described the other photographs of the unknown females as "filth" and "disgusting" and "pornography." (Tr. 474, 476.) The record reflected that she had difficulty looking at those photographs. (Tr. 476, 535.) Although the trial court sustained the defense's objections when the state asked his sister's opinion about whether the unknown females were children, his sister responded, "I don't know that." (Tr. 475.) Again, the court sustained defense's objection to the state's question, "[T]hey [are] disgusting photos of children, right," but his sister answered, "No. Those are not children." (Tr. 474.)

{¶ 10} Allie's wife stated that prior to testifying she had not seen any of the photographs of the unknown females that detectives discovered on her husband's electronic devices. She stated that even after viewing the photographs, she did not "think you could tell that those are children * * * [b]ecause you can't tell that they're

children." (Tr. 496.) Nevertheless, the record reflected that Allie's wife had "to some degree * * * a hard time looking" at the photographs. (Tr. 535.)

{¶ 11} Allie testified in his defense. He stated that he would never knowingly download any images containing child pornography. He stated that he previously had a Pornhub account, but that he deleted the account in 2018. According to Allie, the website indicated that a user had to be 18 to access the website and that the images were those of adults. According to Allie, the six photographs of unknown females are adults, despite Det. Navratil's opinion that the females were minors. He admitted, however, that after detectives conducted the search warrant, he contacted Rotili and apologized "about what had happened and [said] that [he was] very ashamed for [his] family." (Tr. 539.)

{¶ 12} The jury found Allie not guilty of amended Counts 1-6, and Counts 7-9 and 14 (all of those counts pertained to the pictures of his niece), but guilty of Counts 10-13 and 15-16 (the counts pertaining to the photographs of the unknown females), and Count 17, possessing criminal tools.[1] The court sentenced Allie to serve 90 days in jail, with credit for 29 days, and two years of community-control sanctions. As a result of the convictions, he is a Tier I sex offender.

{¶ 13} This appeal followed.

---

[1] Following the close of all evidence, the trial court granted Allie's Crim.R. 29 for Counts 1 through 6, but permitted the state, over objection, to present those counts to the jury under the lesser-included section of R.C. 2907.323(A)(3). Because the jury acquitted Allie of those amended counts, Allie has not raised any issue in this regard, nor does this court express any opinion about the trial court's decision.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 14} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 15} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins* at 387. In a manifest-weight analysis, the reviewing court sits as a "thirteenth juror" and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The

discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

{¶ 16} Although sufficiency and manifest weight are different legal concepts, manifest weight subsumes sufficiency in conducting the legal analysis; that is, a finding that a conviction was supported by the manifest weight necessarily includes a finding of sufficiency. *State v. Holloway*, 8th Dist. Cuyahoga No. 112129, 2023-Ohio-2387, ¶ 24. Thus, a determination that a conviction is supported by the weight of the evidence will also dispose of the issue of sufficiency. *Id.*, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2015-Ohio-1946, ¶ 11, citing *Thompkins*.

{¶ 17} Allie contends in his first and second assignments of error that his convictions for illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3), are based on insufficient evidence and against the manifest weight of the evidence because the state failed to prove that the unknown females displayed in the six photographs were under the age of 18.

{¶ 18} The crux of Allie's argument centers around Det. Navratil's opinion testimony, which according to Allie, was mere speculation because the detective admitted that (1) he did not know the photographed females' names or ages, (2) he was not an expert at age identification, and (3) because of personal grooming and waxing, the lack of pubic hair does not always determine whether a person is a minor. Allie further contends that the detective did not discover any search queries, websites, or chat logs associated with child pornography on his devices that would have supported the state's evidence that the unknown females were minors.

{¶ 19} R.C. 2907.323(A)(3) provides that no person shall "[p]ossess or view any material or performance that shows a minor or impaired person who is not the person's child or ward in a state of nudity." This prohibition is followed by certain defenses that are not relevant to this appeal. *See* R.C. 2907.323(A)(3)(a) and (b). R.C. 2907.01(M) defines "minor" as a person under the age of 18.

{¶ 20} The Ohio Supreme Court has explained that "[a] defendant will be guilty of possessing child pornography under R.C. 2907.323 only if the image depicts a real person under the age of 18 in a state of nudity where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals." *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 41. Moreover, the Ohio Supreme Court has made it clear that the images themselves are sufficient evidence to support a conviction under R.C. 2907.323. *Id.* at ¶ 48-49 (discussing whether a real child versus a computer-generated child is depicted in photographs). *See also State v. Young*, 37 Ohio St.3d 249, 258, 525 N.E.2d 1363 (1988) (upholding convictions for illegal use of a minor in nudity-oriented material or performance based on "the photographs speak for themselves."); *State v. Gann*, 154 Ohio App.3d 170, 2003-Ohio-4000, 796 N.E.2d 942, ¶ 42 (12th Dist.) (same).

{¶ 21} In this case, Det. Navratil testified about the six photographs of the unknown females discovered on Allie's electronic device. He admitted that he did not try to determine the females' identities or actual ages but opined, based on his experience and training, that each unknown female was prepubescent, i.e., a child. (Tr. 374.) He stated that based on his experience, a child hits puberty around age 12

or 13. (Tr. 364.) The jury viewed each photograph as the detective testified about each one; this court has also viewed the photographs.

{¶ 22} Regarding photograph 11, the detective testified that it was found in the path of the Vaulty application on a black Samsung cell phone and displayed two juvenile females with their vaginas exposed, with the focus of the picture being prepubescent females. He stated that he did not observe either pubic hair or breasts in the photograph. (Tr. 337.) On cross-examination, he clarified that the females' breasts are not observable because they are out of view of the photograph itself.

{¶ 23} Regarding photograph 12, Det. Navratil testified that he found it in the path of Vaulty on the black Samsung cell phone and it depicted a young female with her vagina and buttocks exposed, and he observed no pubic hair. (Tr. 338.)

{¶ 24} Regarding photograph 13, the detective testified that it was found in the path of Vaulty on a black Samsung cell phone and showed a young female with her shirt on, but her vagina exposed; he observed no pubic hair. He stated that the photograph also showed the female's face. (Tr. 339-340.)

{¶ 25} Regarding photograph 14, Det. Navratil testified that it was found in the path of Vaulty on a black Samsung cell phone and revealed a young female wearing a shirt, but with her vagina and buttocks exposed. According to the detective, he observed no pubic hair in the photograph.

{¶ 26} Regarding photograph 16, the detective testified that it was found in the path of Vaulty on a black Samsung cell phone and showed a young, naked female

with her vagina and both breasts exposed. (Tr. 344). According to Det. Navratil, he observed no pubic hair in the photograph.

{¶ 27} Regarding photograph 17, the detective testified that it was found in the path of the Vaulty application on the black Samsung cell phone and displayed a young, naked female holding her leg above her head, exposing her vagina. (Tr. 345.)

{¶ 28} Under the plain language of the statute and in accordance with *Tooley*, the state did not have to prove the exact age of the individuals depicted in photographs, but only that the individuals were under the age of 18. Sufficient evidence was presented because the jury observed the photographs and considered Det. Navratil's testimony, mindful of his experience and training in detecting, analyzing, and deciphering child pornography. The state is correct — whether the detective is an expert on pubic hair removal does not diminish his experience upon which his testimony was based. Accordingly, we conclude that a rational juror could find that the seven unknown females in the photographs were under the age of 18 and thus minors as defined under R.C. 2907.01(M).

{¶ 29} Moreover, this court, sitting as the "thirteenth juror," also viewed the photographs of the unknown females. Based on our review of the entire record, we conclude that the jury clearly did not lose its way and create a manifest miscarriage of justice in concluding that the photographs were those of minors as defined under the law. This is not the exceptional case where the evidence weighs heavily against the jury verdict.

{¶ 30} Allie's first and second assignments of error are overruled.

### III. Lay Witness Testimony

{¶ 31} Over objection, Det. Navratil opined that the seven unknown females in the six pictures were prepubescent.[2] In his third assignment of error, Allie contends that the trial court committed reversible error by allowing lay witness testimony in contravention of Evid.R. 402, 403, 602, and 701.

{¶ 32} We will not reverse a trial court's ruling on evidentiary issues absent an abuse of discretion and proof of material prejudice. *See State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 116.

{¶ 33} Under Evid.R. 402, only relevant evidence is admissible. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Nevertheless, even relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶ 34} Evid.R. 701 governs opinion testimony by lay witnesses and provides that such testimony "is limited to those opinions or inferences which are

---

[2] Allie contends that the trial court impermissibly allowed his sister to render an opinion about the maturity of the unknown females. Our review of the record, however, reveals that although court sustained most of Allie's objections during this line of questioning; his sister's subsequent responses were beneficial to his defense — "I don't know that [they are children]"; "No. Those are not children." (Tr. 474-475.)

(1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 35} Under this rule, "if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and helpful to determine facts in issue, the testimony is properly admitted as lay testimony." *State v. Harris*, 8th Dist. Cuyahoga No. 108624, 2020-Ohio-4461, ¶ 53, citing *State v. Maust*, 8th Dist. Cuyahoga No. 103812, 2016-Ohio-3171, ¶ 18. Further, impressions or conclusions are admissible if they assist the jury's understanding or delineate a fact in issue. *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 25, citing *State v. Miller*, 5th Dist. Richland No. 2009-CA-0113, 2010-Ohio-3488, ¶ 50. Additionally, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 36} Finally, Evid.R. 602 provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evidence sufficient to prove personal knowledge "may, but need not, consist of the witness' own testimony." Evid.R. 602. Personal knowledge is "'[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, quoting *Black's Law Dictionary* 875 (7th Ed.1999). *See* Evid.R. 602, Staff Notes (stating that a "witness is required to testify from first-hand

knowledge which has been acquired by perceiving a fact through one or more of his five senses"); *see also Starinchak v. Sapp*, 10th Dist. Franklin No. 04AP-484, 2005-Ohio-2715, ¶ 28.

{¶ 37} In this case, Det. Navratil observed the photographs found on Allie's devices and testified to what conclusions he made based on his personal experience and training. He opined that the seven unknown females in the six photographs were prepubescent because they lacked breast development and pubic hair. We find this testimony well within his personal knowledge and experience, because he testified to having almost ten years of police experience, with the last four years dedicated to crimes against children, including ICAC, which investigates the possession and distribution of child pornography. Det. Navratil's testimony about what characteristics or features he looks for in determining the maturity level in children was permissible under Evid.R. 602 and 701. Accordingly, his testimony was relevant, rationally based on his training and personal experience in sex crimes cases involving children, and aided the trier of fact in determining whether the seven unknown females in the six pictures were minors, i.e., under the age of 18. Moreover, Det. Navratil's testimony was not unfairly prejudicial because the jury viewed the pictures and could make their own determinations whether his opinions or deductions were credible.

{¶ 38} Allie's third assignment of error is overruled.

## IV. Prosecutorial Misconduct

{¶ 39} Allie contends in his fourth assignment of error that the prosecutor engaged in misconduct during closing argument that affected the accuracy, integrity, and reliability of the trial court process and verdict. Specifically, he contends that the prosecutor (1) vouched for the credibility of witnesses; (2) imputed her personal opinion about his guilt that improperly appealed to the jury's emotions, biases, and prejudices; and (3) mischaracterized the evidence and witness testimony.

{¶ 40} Comments made during opening and closing statements are not evidence for the jury to consider. *State v. Frazier*, 73 Ohio St.3d 323, 328, 652 N.E.2d 1000 (1995). Additionally, "[p]rosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. Therefore, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The test regarding prosecutorial misconduct in closing statements is two-fold. A reviewing court must determine whether the remarks were improper, and if so, whether they prejudicially affected the substantial rights of the defendant. *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 156, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

{¶ 41} We note that Allie failed to object to the prosecutor's comments during closing; thus, we also review only for plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22 (Plain error is an obvious error or defect in the trial court proceedings that affects a defendant's substantial right and the outcome of the trial.).

{¶ 42} Allie first contends that the prosecutor engaged in misconduct by improperly appealing to the jury's emotions, biases, and prejudices when the prosecutor stated:

> In this case when you look at those photos, I don't see how anyone with two eyes and a brain with common sense could possibly say that those are adults or could be adults.

(Tr. 612.)

{¶ 43} We find that Allie was not denied a fair trial by this comment. The request for the jury to use its common sense has been determined to be neither prosecutorial misconduct nor plain error. *State v. Morgan*, 2014-Ohio-2472, 14 N.E.3d 452, ¶ 55 (12th Dist.), citing *State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 83. Moreover, the prosecutor made this comment in her final closing argument rebutting defense counsel's assertions during his closing that the state did not present any expert testimony to prove the age of the unknown females, Det. Navratil's opinion about age was irrelevant, and the only evidence the state presented were the photographs themselves. (Tr. 609.) Accordingly, the prosecutor's comment to use common sense did not deprive Allie of a fair trial.

{¶ 44} Allie next contends that the prosecutor engaged in misconduct by improperly imputing her personal opinion about the evidence when she stated:

> Those are prepubescent children. Children who have not been through puberty. They don't have any kind of pubic hair. * * * And when you look at that, you see those children's faces and you see the lack of pubic hair and the lack of breasts. And sometimes it is helpful to cover up the hard parts and look at that face. Look at that and you'll see those are children.

(Tr. 612-613.)

{¶ 45} During closing statements, parties have wide latitude as to what the evidence has shown and what inferences can be drawn from the evidence. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 213. "A prosecutor may state an opinion if based on evidence presented at trial." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 159. Moreover, these comments cannot be taken in isolation. *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning.").

{¶ 46} In this case, we find that the prosecutor's opinion about what the photographs depicted was based on evidence presented at trial through Det. Navratil's testimony and also through the photographs themselves. In fact, when the prosecutor made these statements, she told the jury that "some things speak for themselves," indicating that the jury would need to look at the photographs again during deliberation. (Tr. 612.) Accordingly, Allie was not denied a fair trial by these isolated comments based on the presented evidence.

{¶ 47} Allie further contends that the prosecutor engaged in misconduct by improperly mischaracterizing his sister's testimony when the prosecutor stated:

> You saw [Allie's sister] when she testified and when she had to look at those pictures that were not of her children, she couldn't do it. She wanted to say they were adults because she loves her brother, but she couldn't look.

(Tr. 615-616.) According to Allie, the prosecutor "mischaracterized [his sister's] intent, attacked her credibility, and invited the jury to reject her testimony based on biases and prejudices not indicated or supported by the record."

{¶ 48} We find no misconduct. The prosecutor's comments were made in her final closing after defense counsel stated in his closing that Allie's sister had not been "impeached in any way." (Tr. 599.) *See State v. Wilson*, 12th Dist. Clermont No. CA2001-09-072, 2002-Ohio-4709, ¶ 67 ("[A] prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing argument of defense counsel."). More importantly, however, the prosecutor merely recalled Allie's sister's testimony when she did not want to view the photographs, calling them "filth" and "pornography," but then agreed that she loved her brother and did not want to see him in trouble. (Tr. 480.)

{¶ 49} Based on the foregoing, and viewing the state's closing argument as a whole, we find that Allie has not demonstrated that he was denied a fair trial based on the prosecutor's limited comments. Moreover, the trial court instructed the jury at the beginning of the trial and again immediately prior to closing argument that closing statements by the parties are not evidence. (Tr. 262, 565.) A jury is

presumed to follow the instructions given to it by the trial judge. *State v. Loza*, 71 Ohio St.3d 61, 75, 641 N.E.2d 1082 (1994). Allie's fourth assignment of error is overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
ANITA LASTER MAYS, J., CONCUR