# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RANDY L. NEWBERRY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0032**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 23 CR 173

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, and *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Charles A.J. Strader*, Attorney Charles Strader, LLC, for Defendant-Appellant.

Dated: February 21, 2025

**HANNI, J.**

**{¶1}** Defendant-Appellant, Randy L. Newberry, appeals from a Columbiana County Common Pleas Court judgment convicting him of two counts of illegal use of a minor or impaired person in nudity-oriented material or performance, engaging in prostitution, and possessing criminal tools. Appellant now argues his convictions were against both the manifest weight and the sufficiency of the evidence, that the trial court should have granted his motion for acquittal, and that consecutive sentences were not warranted. Because the trial court's judgment is supported by both the sufficiency and the manifest weight of the evidence and consecutive sentences are not contrary to law, the trial court's judgment is affirmed.

**{¶2}** In an effort to curtail the demand for human trafficking and prostitution, officers working as part of the Mahoning Valley Human Trafficking Task Force create fictitious online identities and engage in online conversations. As part of this work, East Palestine Detective Daniel Haueter created a Facebook account under the name "Tina Kendall" and presented Kendall as an 18-year-old woman who engages in prostitution. From March 8 through March 20, 2023, Appellant had numerous online conversations with Kendall, who was actually Detective Haueter. They discussed sex, drug use, and prostitution. Appellant and Kendall eventually made a plan to meet in East Palestine where Appellant would give Kendall methamphetamine in exchange for sex. Appellant was dropped off at the Circle K in East Palestine, where he and Kendall were to meet. But instead of finding Kendall, Detective Haueter and another officer were waiting for him.

**{¶3}** Appellant was arrested and police confiscated his cell phone. After obtaining a warrant, Detective Haueter inspected Appellant's phone and found two photographs depicting child pornography, among other adult pornography, in Appellant's downloaded files.

**{¶4}** On August 9, 2023, a Columbiana County Grand Jury indicted Appellant on two counts of illegal use of a minor or impaired person in nudity-oriented material or performance, fifth-degree felonies in violation of R.C. 2907.323(A)(3) (Counts 1 and 2); engaging in prostitution, a first-degree misdemeanor in violation of R.C. 2907.231(B) (Count 3); and possessing criminal tools, a first-degree misdemeanor in violation of R.C.

2923.24(A) (Count 4).  Appellant entered a not guilty plea.

{¶5}    The matter proceeded to a bench trial.  The trial court listened to testimony from Detective Haueter and Appellant.  It then found Appellant guilty as charged in the indictment.

{¶6}    On August 12, 2024, the trial court sentenced Appellant to nine months on each of Counts 1 and 2, to be served consecutively to each other.  It sentenced Appellant to 180 days on each of Counts 3 and 4, to be served concurrently with each other and concurrently with the sentences in Counts 1 and 2.  Thus, Appellant's total sentence was 18 months.  The court also designated Appellant as a Tier I sex offender.

{¶7}    Appellant filed a timely notice of appeal on August 15, 2024.  He now raises four assignments of error.  We will address Appellant's assignments of error out of order for ease of discussion.

{¶8}    Appellant's second and third assignments of error share the same basis in law and fact.  For this reason, we will address them together.

{¶9}    Appellant's second assignment of error states:

THE CONVICTION OF NEWBERRY WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE, AND, AS A RESULT, THEREOF, MUST BE REVERSED.

{¶10}  Appellant's third assignment of error states:

THE COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED THE DEFENDANT'S MOTION FOR ACQUITTAL, PURSUANT TO CRIMINAL RULE 29(A) AT THE CONCLUSION OF THE CASE BY THE STATE OF OHIO.

{¶11}  In these assignments of error, Appellant contends his convictions were not supported by sufficient evidence.  He further argues the trial court should have granted his Crim.R. 29(A) motion for acquittal when Plaintiff-Appellee, the State of Ohio, rested its case.

{¶12}  Crim.R. 29(A) provides that, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment

of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard it uses to review a sufficiency of the evidence claim. *State v. Rhodes*, 2002-Ohio-1572, at ¶ 9 (7th Dist.); *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).

**{¶13}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Dickson*, 2013-Ohio-5293, ¶ 10 (7th Dist.), citing *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). Sufficiency is a test of adequacy. *Id.* Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Id.*, citing *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1991) (superseded by state constitutional amendment on other grounds).

**{¶14}** When reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id*. at ¶ 82.

**{¶15}** Appellant was convicted of two counts of illegal use of a minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3), which provides that no person shall:

> (3) Possess or view any material or performance that shows a minor or impaired person who is not the person's child or ward in a state of nudity, unless one of the following applies:

> (a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician,

psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance.

(b) The person knows that the minor's or impaired person's parents, guardian, or custodian has consented in writing to the photographing or use of the minor or impaired person in a state of nudity and to the manner in which the material or performance is used or transferred.

{¶16} Appellant was also convicted of engaging in prostitution in violation of R.C. 2907.231(B), which provides: "No person shall recklessly induce, entice, or procure another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person."

{¶17} Finally, Appellant was convicted of possessing criminal tools in violation of R.C. 2923.24(A), which provides: "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶18} We must examine the evidence put forth by the State to determine if it supports each element of the above offenses.

{¶19} Detective Haueter was the State's only witness. Detective Haueter is an East Palestine police officer and is also a member of the Mahoning Valley Human Trafficking Task Force. The detective testified that as part of his work on the task force, he created an undercover profile on Facebook where he presented himself as an 18-year-old woman named "Tina Kendall." (Tr. 13-14). He stated that on March 8, 2023, Appellant reached out to Kendall. (Tr. 14). The two corresponded via Facebook from March 8 through March 20, 2023. (Tr. 15; State Ex. 1).

{¶20} Detective Haueter read many of the messages between them to the court. At one point, Appellant told Kendall that he "parties", which meant that he uses drugs. (Tr. 19). He asked Kendall what her favorite "party supply" is, which meant he wanted to know her drug of choice. (Tr. 19). Kendall responded, "ice cream", which is slang for methamphetamine. (Tr. 20). Appellant told Kendall his favorite was "weed". (Tr. 19). Kendall told Appellant she was "jonesing, though" because it had "been a week". (Tr. 19).

Case No. 24 CO 0032

**{¶21}** Appellant later messaged Kendall, "I'm into wild, crazy sex and different positions! You down?" (Tr. 20). And Kendall responded that she is not free. (Tr. 20). Appellant asked Kendall for pictures. (Tr. 21). And he asked her if she wanted to come over and "party". (Tr. 21). Kendall stated that she did not have a ride. (Tr. 21). Appellant later asked Kendall if she liked camping and "getting fucked under the stars". (Tr. 22).

**{¶22}** Appellant later told Kendall, "Hope you made good money off of that guy that came, fucked ya, and left, cause he fucked you out some powerhouse partying tonight." (Tr. 23). Kendall responded that she made $250. (Tr. 23). The two then discussed how much drugs cost. (Tr. 24-25). Kendall told Appellant that sometimes she gets her drugs for free if she trades "booty". (Tr. 25). Appellant responded, "I'm in on trading." (Tr. 25). Detective Haueter testified that this meant Appellant was offering to pay in methamphetamine for sex with Kendall. (Tr. 26). Kendall told Appellant, "I'll party with ya for the night for some ice, ya, and you can have me, yes." (Tr. 26). Appellant responded that he had an "8 ball" of drugs on the way to him. (Tr. 26).

**{¶23}** Two days later, Appellant messaged Kendall telling her he "got some ice cream on me right now" and was trying to get ahold of her. (Tr. 28). He then asked where she lived stating that he was in East Palestine. (Tr. 29). Kendall asked where he was and Appellant told her he was at the Circle K. (Tr. 28).

**{¶24}** Detective Haueter and another officer then went to the Circle K in East Palestine where they found Appellant waiting. (Tr. 30). The detective called the Facebook account that he had been communicating with Appellant on and the phone Appellant had with him rang, indicating it was the device he had been using to communicate with Kendall. (Tr. 30). The detective then seized the phone and obtained a warrant to search it. (Tr. 31).

**{¶25}** Detective Haueter testified that the phone was in poor shape so he was not able to complete a "full extraction" to view its entire contents. (Tr. 32). Instead, the detective used a program called "Link Screen Capture" to view the images on Appellant's phone. (Tr. 32-33). In viewing the images on Appellant's phone, Detective Haueter found two photographs depicting child pornography in the download folder. (Tr. 33). Both images were of prepubescent females, one who was completely naked and the other who was naked and using a sex toy on herself. (Tr. 35; State Ex. 3). These images were

saved to a jump drive and shown to the court. (Tr. 36; State Ex. 3). He stated there were also numerous images of adult pornography. (Tr. 34).

**{¶26}** On cross-examination, Detective Haueter testified that while Appellant was supposed to have brought drugs with him to meet Kendall, he did not have the drugs on his person at the time of his arrest. (Tr. 42). The detective noted, however, that Appellant had been dropped off at the Circle K and did not have his car with him. (Tr. 42).

**{¶27}** As to the illegal use of a minor or impaired person in nudity-oriented material or performance convictions, Appellant argues there was no evidence that the images depicted real children and were not computer-generated and, therefore, the State did not present sufficient evidence to support these charges. He cites to *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), for support.

**{¶28}** In *Ashcroft*, the United States Supreme Court considered whether the expansion of the Child Pornography Prevention Act of 1996 (CPPA) to include not only pornographic images made using actual children but also computer-generated images of children was unconstitutional. The Court determined that virtual child pornography, not using images of actual children, is a form of protected speech. *Id.*

**{¶29}** Appellant reads *Ashcroft's* holding too far in arguing the State did not provide sufficient evidence here that the photographs on his phone depicted actual children. In addressing this issue, the Ohio Supreme Court has held:

> The state must prove beyond a reasonable doubt that a real child is depicted, to support a conviction for possession of child pornography under either R.C. 2907.322 or 2907.323. In most cases, meeting this burden will require presentation of the images themselves. Expert witnesses may not be needed if the state's assertion that an actual child is involved goes unchallenged. . .

> Tooley suggests that *Ashcroft* implicitly recognized that mere images alone are now insufficient to prove that a real child is involved. But *Ashcroft* did not impose a heightened evidentiary burden on the state to specifically identify the child or to use expert testimony to prove that the image contains a real child. Federal courts that have considered this issue agree. See, e.g.,

> *United States v. Slanina* (C.A.5, 2004), 359 F.3d 356, 357; *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132, 1142 ("Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge"); *United States v. Deaton* (C.A.8, 2003), 328 F.3d 454, 455; *United States v. Hall* (C.A.11, 2002), 312 F.3d 1250, 1260.

*State v. Tooley*, 2007-Ohio-3698, ¶ 49-50. Thus, the Ohio Supreme Court has determined that the State is not required to put forth expert testimony to prove an image is of an actual child.

**{¶30}** Moreover, in *Ashcroft*, 535 U.S. at 254, the United States Supreme Court expressed doubt that images of actual children and simulated children were indistinguishable stating: "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes. Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice."

**{¶31}** Since the Ohio Supreme Court decided *Tooley* in 2007, there have been advancements in technology that might make computer-generated pictures more realistic. But several more recent cases have applied the 2007 Ohio Supreme Court case law including one from our district. *See State v. Gawron*, 2021-Ohio-3634 (7th Dist.); *State v. Allie*, 2024-Ohio-2262 (8th Dist.); *State v. Bates*, 2018-Ohio-3632 (5th Dist.).

**{¶32}** The evidence here was sufficient to support the two convictions for illegal use of a minor or impaired person in nudity-oriented material or performance. Detective Haueter found two photographs depicting child pornography in the download folder on Appellant's phone. The images were captured to a jump drive and shown to the court. The images were of prepubescent females, one who was completely naked and the other who was naked and using a sex toy on herself. This evidence was sufficient to support these convictions.

**{¶33}** As to the engaging in prostitution conviction, Appellant argues that the evidence revealed that Kendall was attempting to exchange sex with him for drugs. He claims that he did not solicit sex from Kendall, instead he claims she propositioned him. And he notes that when he was arrested, he did not have any drugs in his possession.

{¶34} The online conversations between Appellant and Kendall show that on March 16, 2023, Appellant told Kendall that he hoped she made "good money" from a man who came over and "fucked" her. She responded that she made $250. The two next discussed Appellant getting drugs for Kendall and her friend. The next day, Appellant asked Kendall how much she usually pays for drugs. She responded that sometimes she gets them for free if she trades "booty." Appellant told her "I'm n on trading!", to which Kendall responded "ok". The next day, Appellant asked her, "We gonna fuck today through to tonight? While partying at the same time?? I supply everything". Kendall responded that she would party with him for some "ice." Three days later, Appellant messaged Kendall that he had some "ice cream" for her. She told him to bring it to her and he asked if they were going to "fuck." Appellant later messaged Kendall that he was in East Palestine at the Circle K. She asked if he had her "shit" and Appellant said yes. The police then met Appellant at the Circle K in East Palestine.

{¶35} The engaging in prostitution statute provides that "[n]o person shall recklessly induce, entice, or procure another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person." The evidence above, when construed in the State's favor, was sufficient to prove that Appellant induced or enticed Kendall to engage in sex for hire in exchange for drugs. The fact that the actual transaction never took place does not detract from the facts that Appellant induced or enticed Kendall to meet him at the Circle K to trade sex for drugs.

{¶36} Finally, as to the possession of criminal tools conviction, Appellant argues there was no evidence that he attempted to use his cell phone to further any criminal activity. He bases his claim here on his argument that there was insufficient evidence to support the illegal use of a minor or impaired person in nudity-oriented material or performance and engaging in prostitution convictions.

{¶37} As discussed above, however, there was sufficient evidence to support Appellant's illegal use of a minor or impaired person in nudity-oriented material or performance and engaging in prostitution convictions. Both of these offenses included Appellant's use of his cell phone with the purpose to use it criminally. Thus, the evidence was sufficient to support Appellant's possession of criminal tools conviction.

Case No. 24 CO 0032

**{¶38}** Accordingly, Appellant's second and third assignments of error are without merit and are overruled.

**{¶39}** Appellant's first assignment of error states:

THE CONVICTION OF NEWBERRY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND, AS A RESULT, THEREOF, MUST BE REVERSED.

**{¶40}** Here, Appellant asserts his convictions were against the manifest weight of the evidence.

**{¶41}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* at 387, quoting *Black's Law Dictionary* (6 Ed.1990) (Emphasis sic). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶42}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *State v. Woullard*, 2004-Ohio-3395, ¶ 81 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins*, 78 Ohio St.3d at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 2002-Ohio-4931, ¶ 36 quoting Ohio Const., art. IV, § 3(B)(3).

**{¶43}** In considering whether Appellant's convictions are against the manifest weight of the evidence, in addition to the State's evidence, we must also consider Appellant's testimony.

Case No. 24 CO 0032

**{¶44}** Appellant testified that he does not have much knowledge regarding cell phones and always has people help him with his phone. (Tr. 54). He stated sometimes others have taken his phone and kept it for days. (Tr. 54). Appellant stated that he has allowed friends to use his phone and sometimes others have hacked into his accounts. (Tr. 55-56). He testified that he never agreed to exchange drugs for sex. (Tr. 56). Appellant also testified that he had no knowledge of the child pornography images on his phone. (Tr. 58).

**{¶45}** On cross-examination, Appellant stated that he did not recall if he was the one who was messaging Kendall. (Tr. 59). He also stated that someone else used his photograph in his Facebook profile. (Tr. 59). Appellant claimed that he knew "for a fact" that he did not put the child pornography photos on his phone. (Tr. 64). He stated it could have been a friend or it could have been the police who put the images on his phone. (Tr. 63-64).

**{¶46}** As to the illegal use of a minor or impaired person in nudity-oriented material or performance convictions, Appellant argues there was no way to tell where the images of the children originated from or were downloaded from. Appellant seems to argue there was no concrete evidence that the images actually came from his cell phone.

**{¶47}** Appellant testified that he did not download the pornographic images of the children onto his phone. He claimed it must have been a friend or the police. Whether to believe Appellant was a matter of credibility for the court, as the trier of fact, to determine. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finder's determination of witnesses' credibility. *State v. Jackson*, 2009-Ohio-6407, ¶ 18 (7th Dist.). The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶48}** In this case, the trial court clearly did not find Appellant's testimony to be truthful. It was up to the court whether to believe Appellant's testimony that he did not

Case No. 24 CO 0032

download the pornographic images onto his phone. We will not second-guess the fact finder's credibility determination here.

**{¶49}** As to the engaging in prostitution conviction, Appellant asserts there was a break of several days between the conversation between Kendall and him and his arrest. Appellant states there was no evidence that on the day he was arrested, he agreed to meet Kendall to exchange drugs for sex. He also points out that he did not have any drugs with him when he was arrested.

**{¶50}** The conversations between Appellant and Kendall spanned almost two weeks. During this time, the two had several discussions about "partying", which Detective Haueter testified means using drugs. They also discussed Kendall preferring "ice" or "ice cream", which the detective stated means methamphetamine. Kendall discussed getting paid for sex and that sometimes she trades sex in exchange for drugs. On March 17, 2023, Appellant expressed that he was "in on trading" and Kendall responded she would trade sex with her for "ice". Appellant told her he had the drugs on the way to him. On March 20, 2023, Appellant messaged Kendall that he now had the "ice cream". They then made plans to meet that day. Appellant messaged Kendall when he was at the Circle K in East Palestine. She asked "U have my shit or not??" and Appellant responded "Yes". But instead of Kendall meeting Appellant at the Circle K, police met him there.

**{¶51}** The fact that Appellant's conversation with Kendall spanned numerous days does not detract from the facts that Appellant agreed to meet Kendall at a specified time and place to trade drugs for sex. Moreover, the fact that Appellant did not have the drugs on him at the time also does not take away from the fact that he made the plan and then went to the Circle K in East Palestine expecting to find Kendall waiting for him.

**{¶52}** Finally, as to the possessing criminal tools conviction, Appellant claims there was no evidence that he had the cell phone for the purpose of criminal activity. He asserts that if this Court concludes that his other convictions should be reversed, then it necessarily follows that his possessing criminal tools conviction should also be reversed.

**{¶53}** Appellant's argument here relies on his presumption that his other convictions were not supported by the weight of the evidence and, therefore, there was no evidence that he used his cell phone for criminal activity. Because Appellant's

convictions for illegal use of a minor or impaired person in nudity-oriented material or performance convictions and engaging in prostitution convictions are supported by the manifest weight of the evidence, this same evidence demonstrated that Appellant used his cell phone for the criminal activity outlined in the other offenses.

**{¶54}** For all of the reasons explained above, Appellant's convictions were not against the manifest weight of the evidence.

**{¶55}** Accordingly, Appellant's first assignment of error is without merit and is overruled.

**{¶56}** Appellant's fourth assignment of error states:

THE COURT COMMITTED REVERSIBLE ERROR WHEN IT SENTENCED THE [sic] NEWBERRY TO CONSECUTIVE SENTENCES FOR THE CONVICTION OF TWO (2) COUNTS OF ILLEGAL USE OF A MINOR OR IMPAIRED PERSON IN NUDITY-ORIENTED MATERIAL, OR PERFORMANCE, FELONIES OF THE FIFTH DEGREE UNDER OHIO REVISED CODE SECTION 2907.323(A)(3).

**{¶57}** In his final assignment of error, Appellant argues the trial court should not have sentenced him to consecutive sentences. He asserts the trial court failed to take into account the facts that these offenses occurred during the same course of conduct.

**{¶58}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

**{¶59}** The trial court sentenced Appellant to nine months on each of Counts 1 and 2, to be served consecutively with each other. It sentenced Appellant to 180 days on each of Counts 3 and 4, to be served concurrently with each other and concurrently with his sentences in Counts 1 and 2.

**{¶60}** As to the issue of consecutive sentences, R.C. 2929.14(C)(4) requires a trial court to make specific findings:

Case No. 24 CO 0032

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶61} It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 2013-Ohio-2956, ¶ 17 (7th Dist.)  The court need not give its reasons for making those findings however. *State v. Power*, 2013-Ohio-4254, ¶ 38 (7th Dist.).  A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry.  *State v. Williams*, 2015-

Ohio-4100, ¶ 33-34 (7th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

**{¶62}** In this case, the trial court made each of the three required consecutive sentencing findings at the sentencing hearing. At the hearing, the court found that consecutive sentences were necessary to protect the public from future crime or to punish the offender. (Sentencing Tr. 19). It next found that consecutive sentences were not disproportionate to the seriousness of the offender's conduct. (Sentencing Tr. 19). Finally, it found that the offender committed these offenses while he was awaiting trial or sentencing for a prior offense and that the offender's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him. (Sentencing Tr. 19). The court then repeated each of these findings in its judgment entry. Thus, the trial court made the statutorily-required findings necessary to sentence Appellant to consecutive sentences.

**{¶63}** Appellant's only argument here is that the trial court failed to take into account the fact that these offenses occurred during the same course of conduct pursuant to R.C. 2929.14(C)(4)(b). But the trial court did not make the finding regarding multiple offenses being committed as part of one or more courses of conduct. Instead, it made the other findings under R.C.2919.14(C)(4)(a) and (c). The court was only required to make one out of these three findings. Thus, Appellant's argument here lacks merit.

**{¶64}** Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

**{¶65}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 24 CO 0032

[Cite as *State v. Newberry*, 2025-Ohio-586.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**